# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO JAMES HAWLEY, | : | No. 3:23cv1434 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN BOBBI JO SALAMON, *et al.* | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Antonio James Hawley initiated this action pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violations of his First, Fourth, and Eighth Amendment rights.  He is presently incarcerated at State Correctional Institution, Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania and proceeds in this matter *pro se*.  This action concerns events at State Correctional Institution, Rockview ("SCI-Rockview") in Bellefonte, Pennsylvania after prison officials transferred Hawley to the restricted housing unit ("RHU") at that institution. (See Doc. 80, Sec. Am. Compl.).

Before the court is a Report and Recommendation ("R&R") issued by Magistrate Judge Martin C. Carlson. (Doc. 93).  Hawley has filed objections to the R&R and those objections are ripe for disposition.

**Background**

The R&R recommends dismissal of this action due to Hawley's failure to file a brief in opposition to the defendant's motion to dismiss his second amended complaint.[1] Magistrate Judge Carlson issued the R&R on February 28, 2025, more than two (2) months after the deadline for Hawley to file his brief and after the magistrate judge provided plaintiff with two extensions of time. In recommending dismissal, the R&R includes discussion of the Rules of Court for the Middle District of Pennsylvania ("Local Rules"), previous orders advising the plaintiff of the consequences of not filing a brief in opposition, and the factors set forth at Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

On March 20, 2025, Hawley filed objections to the R&R. (Doc. 96). The plaintiff asserts that government interference, mail tampering, limited law library access, and his indigency prevented him from timely responding to the defendants' motion to dismiss. (Id. at ECF p. 1-2). He also argues that all his

---

[1] Hawley initiated this Section 1983 action on August 28, 2023, (Doc. 1), and the magistrate judge previously permitted Hawley to amend his complaint on April 15, 2024. (Doc. 39). Defendants subsequently filed a motion to dismiss the amended complaint. (Doc. 42). Magistrate Judge Carlson then issued an R&R recommending that the motion be granted without leave to amend. (Doc. 60). On August 8, 2024, the Honorable Christopher C. Conner adopted the R&R in part and dismissed the amended complaint, but Judge Conner's order provided Hawley leave to file a second amended complaint. (Doc. 71). Hawley then filed his second amended complaint on October 4, 2024. (Doc. 80). Defendants responded with a motion to dismiss for failure to state a claim on October 18, 2024. (Doc. 84).

claims have merit.  Those claims are alleged in the second amended complaint

as follows:

### 1. Deprivation of "Basic Issue"

This Section 1983 action arises out of events at SCI-Rockview upon

Hawley's transfer to the RHU on March 3, 2023.[2] (Doc. 80, Sec. Am. Compl ¶ 3).

Hawley alleges that RHU staff initially denied him "basic issue" for approximately

three (3) days, that is, he did not receive additional clothing, bedding, and

toiletries. (Id. ¶¶ 2-3, 12).  Per the second amended complaint, Defendant

Corrections Officer ("CO") McIntyre conducted Hawley's RHU intake and

escorted him to his cell. (Id. ¶¶ 4, 7).  Despite plaintiff's requests for these items,

CO McIntyre did not provide him with them until March 5, 2023. (Id. ¶ 12).  In the

interim, Hawley notified at least two other COs and a prison nurse, who

responded with sarcasm and/or indifference. (Id. ¶¶ 9-11). During that period,

Hawley alleges that he suffered from sleep deprivation because his cell was cold

and he was only covered by a jumpsuit. (Id. ¶ 6).  When CO McIntyre arrived with

items on March 5, 2023, he allegedly told the plaintiff: "There now you can stop

---

[2] At this stage of the proceedings, the court must accept all factual allegations in the plaintiff's pleadings as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

bitching." (Id. ¶ 12).  Consequently, Hawley contends that his Eighth Amendment rights were violated.

### 2. Strip Searches

Additionally, Hawley avers that he experienced four strip searches between March 5, 2023 and March 7, 2023 in front of his RHU cell mate. (Id. ¶ 16).  These strip searches were conducted by Defendants CO Hayles, CO Fye, CO Shafer, and two John Doe corrections officers.  According to Hawley, these guards "would make a game of it." (Id. ¶¶ 20-21).   In particular, the officers made him place his hands and fingers on his genitals and then into his mouth during the searches. (Id.).

Per plaintiff, he discussed the manner of these strip searches with Defendant Counselor Lion while she conducted her rounds in the RHU and he requested forms to file a claim for abuse under the Prison Rape Elimination Act ("PREA").  (Id. ¶¶ 22-23).  Counselor Lion allegedly responded, "so," "is that it," "so what," and "don't come to the hole." (Id. ¶ 24).  Plaintiff alleges that a different John Doe corrections officer picked up his PREA complaint from his cell on March 10, 2023. (Id. ¶ 28, Ex. A).  Per Hawley, he also lodged a grievance related to the strip searches with Nikki Paul, SCI-Rockview's grievance coordinator, but did not receive any recourse. (Id., Ex. B).

From the above conduct, Hawley contends that these defendants violated his Fourth and Eighth Amendment rights.  The second amended complaint also raises a First Amendment retaliation claim related to the strip searches.  Hawley advances that the strip searches were in retaliation for his protected conduct. (Id. ¶ 104).  That is, the plaintiff asserts that the strip searches were the result of his verbal complaints about the lack of items initially provided to him in the RHU and/or from ongoing verbal and written complaints about not being provided with hygiene packets, razors, and nail clippers, as further discussed below.[3]

### 3. Cell Conditions

On March 10, 2023, Hawley alleges that Defendants CO Jenks, CO Shafer, CO Hershey, and CO Corman transferred him to an adjacent RHU cell following another strip search in front of his cell mate. (Id. ¶¶ 30-32).  Per Hawley, the cell was "shockingly unsanitary" with "bloody mucous, feces, [and] food on the walls, ceiling, ventilation, and light." (Id. ¶ 33).  Moreover, "the walls, light [fixture]… [and] ceiling were stained brown, red [and] yellow" and the cell smelled of "blood, urine, [and] feces." (Id.)  Hawley alleges that he notified the above-named guards

---

[3] Hawley's pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true given Hawley's incarcerated status.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

and requested a complaint form, but instead of rectifying the situation, they took his towel, cup, boxers, and blanket. (Id. ¶¶ 34-35).

Hawley alleges that he stayed in this cell with another prisoner from March 10, 2023 to April 27, 2023, or 48 days.  (Id. ¶¶ 38-39).  Per plaintiff, during this time, RHU staff denied him showers, yard time, law library access, and cell cleaning equipment. (Id. ¶¶ 38-39).  Hawley avers that his cell conditions made him vomit and caused headaches, dizziness, nausea, and sleeplessness. (Id. ¶ 41).

Hawley's second amended complaint also references that, during this period, "approximately 15 other prisoners peacefully protested." (Id. ¶ 42). Consequently, Defendants Warden Bobbi Jo Salamon, Deputy Superintendent Michael Rowe, and Deputy Superintendent Woodring made rounds in the RHU between April 4, 2023 and April 5, 2023. (Id. ¶¶ 43, 48).  Per Hawley, he called out to Rowe and Woodring, but they failed to stop at his cell. (Id. ¶¶ 44-45). Warden Salamon did stop at his cell, according to the plaintiff, but her response to his complaints, detailed above, were: "So what, don't come to jail." (Id. ¶ 47). Hawley also filed a grievance with Defendant Paul related to his cell conditions. (Id., Ex. C).  He alleges that Paul ignored the grievance.  Additionally, Hawley avers that he sent request forms to Major Haldeman regarding cell conditions

and deprivations of items, but she only responded: "Did you speak with [RHU Unit Manager] Miller?" (Id., Exs. N-O).

From the above conduct, Hawley contends that these defendants violated his Eighth Amendment rights. Hawley also contends that placement in this cell was in retaliation for requesting items, filing a PREA complaint, and seeking to grieve his issues. (Id. ¶ 106).

### 4. "Indigent Status Hygiene Packet With Razor"

Hawley's second amended complaint further alleges that he has had ongoing issues receiving an "indigent status hygiene packet with razor" dating back to October 12, 2022. (Id. ¶ 54). These issues continued through Hawley's transfer to the RHU and accompany the plaintiff's other allegations related to cell conditions in that unit. (Id. ¶¶ 39, 47, 59). Per Hawley, SCI-Rockview officials replaced Defendant Michael Knapp, the first RHU manager, with Defendant Cris Miller during the plaintiff's confinement in that unit. (Id. ¶¶ 50-52). Plaintiff allegedly sent numerous request forms seeking both razors and nail clippers and he has attached inmate request forms addressed to RHU Unit Manager Knapp, RHU Manager Miller, Medical Supervisor Elaine Coffman, Major Haldeman, Deputy Superintendent Woodring, and Warden Salamon to his second amended complaint. (Id. ¶¶ 54-77, Exs. B-F, H-R). Per plaintiff, prison staff did not provide razors or nail clippers despite his requests and thus he was forced to chew off his

fingernails and pull out his facial and body hair. (Id. ¶ 98). Related to the use of the prison grievance system, Hawley alleges that Defendant Paul returned his grievances unanswered or otherwise failed to respond and investigate these issues. (Id. ¶¶ 78-95).

Based upon the above allegations, Hawley's second amended complaint asserts Section 1983 claims for violations of his First, Fourth, and Eighth Amendment rights. On October 18, 2024, defendants filed a motion to dismiss the second amended complaint. (Doc. 84). That motion prompted the issuance of the R&R after Hawley failed file a brief in opposition in accordance with court orders. (Doc. 93). Hawley then filed objections to that R&R, (Doc. 96), which bring this case to its present posture.

**Jurisdiction**

Hawley initiated this action pursuant to Section 1983. The court thus has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of Review**

Hawley's objections concern an R&R recommending that the plaintiff's second amended complaint be dismissed with prejudice for failure to prosecute. In disposing of objections to a magistrate judge's report and recommendation,

8

the district court must make a *de novo* determination of those portions of the

report against which objections are made.  28 U.S.C. § 636(b)(1)(c); <u>see also</u>

<u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge.  <u>Henderson v. Carlson</u>, 812 F.2d 874, 877 (3d Cir. 1987).

The district court judge may also receive further evidence or recommit the matter

to the magistrate judge with instructions.  <u>Id.</u>

**Analysis**

**A. Defendant's Motion to Dismiss is Deemed Unopposed**

Hawley failed to file a brief in opposition to the defendants' motion to

dismiss.  The Local Rules provide that:

> Any party opposing any motion, other than a motion for
> summary judgment, shall file a brief in opposition within
> fourteen (14) days after service of the movant's brief, or, if
> a brief in support of the motion is not required under these
> rules, within seven (7) days after service of the motion. Any
> party who fails to comply with this rule shall be deemed not
> to oppose such motion.

M.D. PA. L.R. 7.6.

By rule, Hawley's initial deadline to file a brief in opposition was November

15, 2024.  On November 22, 2024, Magistrate Judge Carlson advised Hawley of

the requirements under Local Rule 7.6 and provided him with an additional

fourteen (14) days to file a brief. (Doc. 86)  Hawley then filed a motion to extend

the deadline, which was granted, and the magistrate judge extended the opposition brief deadline to December 20, 2024. (Doc. 89). That deadline passed without a response from the plaintiff.

On December 27, 2024, the Clerk of Court docketed a letter from Hawley, dated December 21, 2024, indicating that he had been transferred to the RHU for a misconduct. (Doc. 91). Hawley also indicated that he was without access to his legal papers, envelopes, and the prison law library. (Id.) Hawley asserted that he had filed prison grievances related to same. (Id.) He did not specifically request an additional extension of time, only "another Section 1983 form." (Id.) Thus, no additional extensions were provided based on Hawley's letter, and he acknowledged that circumstance in a subsequent undated letter docketed on January 27, 2025. (Doc. 92). Hawley also did not attempt to file a *nunc pro tunc* brief in opposition prior to the issuance of the R&R, only the subsequent objections pending before the court.

Under these particular circumstances, the court will construe Hawley's objections to the R&R as containing the arguments he would have made if he had filed a brief in opposition to defendants' motion to dismiss in a timely manner. An incarcerated *pro se* litigant cannot flout procedural rules and must abide by the same rules that apply to all other litigants. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) On the other hand, Hawley

alleges that he has experienced significant impediments caused both by a

misconduct in prison, subsequent restrictions placed on him in the RHU, and

additional alleged denials of resources at a different prison.  Furthermore, an

unopposed motion is not a sufficient basis for the court to dismiss this case at

this posture.  See Shuey v. Schwab, 350 F.App'x. 630, 633 (3d Cir. 2009);

Hernandez v. Palakovich, 293 F.App'x. 890, 895 (3d Cir. 2008); Stackhouse v.

Mazurkiewicz, 951 F.2d 29 (3d Cir. 1991).  So, the court will make a finding that

Hawley failed to fulfill a court-ordered obligation.  But the court will not dispose of

this action in a summary manner.

## B. The Poulis Factors

The R&R recommends dismissal of this action pursuant to Federal Rule of

Civil Procedure 41(b) and the Poulis factors.  Decisions regarding dismissal of

actions for failure to prosecute rest in the sound discretion of the court and will

not be disturbed absent an abuse of that discretion. Emerson v. Thiel Coll., 296

F.3d 184, 190 (3d Cir. 2002).  Such discretion is regulated by the required

balancing of the following factors: (1) the extent of the party's personal

responsibility; (2) the prejudice to the adversary caused by the failure to meet

scheduling orders and respond to discovery; (3) a history of dilatoriness; (4)

whether the conduct of the party was willful or in bad faith; (5) the effectiveness

of sanctions other than dismissal, which entails an analysis of alternative

sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis</u>, 747 F.2d at 868.

Based upon Hawley's specific objections, these factors will be reviewed *de novo*. The court will begin with discussion of the merits of Hawley's claims. Consideration of the merits is of paramount importance because dismissal of this action would deprive the plaintiff of his day in court. <u>See</u> <u>Knoll v. City of Allentown</u>, 707 F.3d 406, 409 (3d Cir. 2013). "A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." <u>Poulis</u>, 747 F.2d at 869–70. "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[4] <u>Briscoe v. Klaus</u>, 538 F.3d 252, 263 (3d Cir. 2008) (citing <u>Poulis</u>, 747 F.2d at 869–70).

---

[4] The motion underlying the R&R is defendants' motion to dismiss Hawley's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. <u>See</u> <u>Phillips</u>, 515 F.3d at 233 (citations omitted).

## 1. Meritoriousness

The introduction section of Hawley's second amended complaint names at least seventeen (17) different defendants employed at SCI-Rockview during the relevant timeframe: 1) Warden Salamon; 2) Deputy Superintendent Woodring; 3) Deputy Superintendent Rowe; 4) RHU Manager Miller; 5) RHU Manager Knapp; 6) Nurse More; 7) Counselor Lion; 8) CO Jenks; 9) CO Hershey; 10) CO Fye; 11) CO Hayles; 12) CO Corman; 13) CO Shafer; 14) CO Burns; 15) CO McIntyre; 16) Major Haldeman[5]; and 17) Grievance Coordinator Paul. (Doc. 80, ECF p. 1-3).  The body of Hawley's second amended complaint also alleges wrongdoing by other SCI-Rockview employees: 18-19) two (2) unknown COs, named as John Does, who conducted strip searches of the plaintiff in March 2023, (id. ¶¶ 17-20); 20) CO Chriswell, who responded sarcastically to plaintiff's request for basic items, (id. ¶ 9); 21) CO Bowersox, who ostensibly failed to return a cash slip regarding postage to mail Hawley's PREA complaint, (id. ¶¶ 25-27); and 22) Medical Supervisor Elaine Coffman, who allegedly did not respond sufficiently to the plaintiff's request for nail clippers, (id. ¶ 63).  As discussed below, Hawley's

---

[5] After careful review of the second amended complaint, it appears that Hawley refers to Major Haldeman using several different spellings of her last name, including "Halden."  The court will refer to this individual as Major Haldeman.

second amended complaint contains claims which would survive a Rule 12(b)(6) motion, but it does not state meritorious claims against all of these defendants.

### a. Conditions of Confinement Claims

Hawley's second amended complaint asserts claims for violation of his Eighth Amendment rights.[6]  The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend XIII.  An inmate's conditions of confinement relate to punishment, see Rhodes v. Chapman, 452 U.S. 337, 347 (1981), so "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Eighth Amendment thus imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care[.]" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(citations omitted).

Here, Hawley's claims relate to the denial of clothing, bedding, grooming tools, showers, yard time, law library access, and the conditions of his second

---

[6] Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).

RHU cell, but the deprivations alleged do not relate to the denial of medical care.[7] To prevail on his various conditions of confinement claims, Hawley "must meet two requirements: (1) the deprivation alleged must be, objectively, 'sufficiently serious,' and (2) the 'prison official must have a sufficiently culpable state of mind.' " Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020)(citing Farmer, 511 U.S. at 834).

Regarding the first element, "the Constitution does not mandate comfortable prisons," Rhodes, 452 U.S. at 349, "and only those deprivations denying 'the minimal civilized measure of life's necessities,'… are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991)(quoting Rhodes, 452 U.S. at 347). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.' " Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2022)(quoting Farmer, 511 U.S. at 834). Consequently, "extreme deprivations are required to

---

[7] Hawley's exhibits include a grievance about strip searches that reference denial of medical treatment. (Doc. 80, Ex. A, Part 2). The body of Hawley's second amended complaint, however, does not assert an Eighth Amendment claim related to the denial of medical care. Another exhibit reflects that Hawley requested nail clippers from Elaine Coffman, a medical supervisor at SCI-Rockview, (Doc. 80, Ex. H). Although the use of nail clippers might be relevant to treatment of a specific medical condition, Hawley has not averred that he suffered from any ailments related to his hands or feet.

make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992)

The second element of a conditions of confinement claim "is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights." Thomas, 948 F.3d at 138. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and the official "must also draw the inference." Farmer, 511 U.S. at 837. "The knowledge element of deliberate indifference is subjective...meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837–38). A prison official is deliberately indifferent if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Chavarriaga v. New Jersey Dep't. of Corr., 806 F.3d 210, 229 (3d Cir. 2015) (quotation omitted).

"[D]eficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment." Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against

16

society." <u>Rhodes</u>, 452 U.S. at 347.  Here, Hawley alleges being deprived of

additional clothing, bedding, and toiletries for three days upon transfer to the

RHU.  While harsh, the deprivation of clothing or shelter alleged does not rise to

the level of severity required to state a plausible Eighth Amendment claim.  <u>See</u>

<u>Adderly v. Ferrier</u>, 419 F. App'x 135, 140 (3d Cir. 2011) (holding that denial of

access to, *inter alia*, clothing, toiletries, and a pillow for two separate seven-day

periods did not constitute a denial of the minimal civilized measures of life's

necessities)(citing <u>Williams v. Delo</u>, 49 F.3d 442, 444–47 (8th Cir.1995)); <u>Booth</u>

<u>v. King</u>, 228 F. App'x 167, 171 (3d Cir. 2007) (temporary confinement in a cell

with broken windows for fifteen days does not amount to the kind of extreme

deprivation required to make out a conditions-of-confinement claim); <u>Camp v.</u>

<u>Brennan</u>, 54 F. App'x 78, 81 (3d Cir. 2002)(restraining inmate on a table with only

a blanket for two days did not violate the Eighth Amendment).

Likewise, Hawley's allegations that prison officials denied him unfettered

access to a razor and nail clippers fail to state a claim for violation of his Eighth

Amendment rights, particularly given Hawley's RHU placement.  <u>See</u> <u>Fantone v.</u>

<u>Herbik</u>, 528 F. App'x 123, 127 (3d Cir. 2013); <u>Washington v. Grace</u>, 445 F. App'x

611, 616 (3d Cir. 2011).  Consequently, Hawley's claims related to denial of

basic issue, hygiene packets, razors, and nail clippers are subject to dismissal,

as are the defendants solely associated with this portion of Hawley's second

amended complaint, such as CO McIntyre, CO Chriswell, Nurse More, and Medical Supervisor Coffman.

Nonetheless, Hawley also alleges that prison officials confined him with another person in a cell covered in food, bodily fluids, and excrement for 48 days, while, at the same time, denying him showers, yard time, and cell cleaning equipment. Hawley avers that his cell conditions made him vomit and caused headaches, dizziness, nausea, and sleeplessness. Hawley also contends that corrections officers and administrative officials at SCI-Rockview observed these conditions and their effects, yet the plaintiff was not even provided with cleaning supplies to address the condition of his shared cell.

Hawley's second amended complaint sets forth a plausible Eighth Amendment claim. That is, plaintiff alleges that he was forced to live in abject squalor for 48 days and suffered adverse health effects arising from both the conditions of his cell and denials of showers and yard time. He has also alleged knowledge and awareness of the risks of this confinement on the part of Defendants CO Jenks, CO Shafer, CO Hershey, and CO Corman, and as discussed further below, on the part of Warden Salamon. Consequently, given the conditions alleged by Hawley and averments related to the knowledge of certain defendants, this claim would survive the defendants' motion to dismiss.

**b. Strip Search Claims**

Hawley also alleges that his Fourth and Eighth Amendment rights were violated by four strip searches between March 5, 2023 and March 7, 2023.  Per the plaintiff, Defendants CO Fye, CO Hayles, and CO Shafer, and two John Doe corrections officers conducted these strip searches like a game.  Specifically, Hawley alleges that these searches were conducted in front of his cell mate and that the officers, while laughing, specifically directed him to lift his genitals and then place his fingers into his mouth.  (Doc. 80 ¶¶ 20-21).  Per the averments, this prompted Hawley to pursue a PREA complaint and initiate a prison grievance.

Sexual abuse of inmates by prison officials violates the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018).  Hawley's sexual abuse claim is proven by reference to objective and subjective prongs under a framework derived from excessive force cases. Id. at 474.  Regarding the subjective prong, the court considers "whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.' " Id. at 475 (quoting Whitley v. Albers, 475 U.S. 312, 319–320 (1986)). Because this is a mental state, it must be inferred from conduct such as harassing comments, or an overly invasive search in violation of facility policy. See id. (citations omitted). "[A] desire to humiliate the inmate or gratify the

officer—inferred through the officer's conduct—is a reasonable way to distinguish between invasive touching that is permitted by law to ensure safety and that which is not." Id. at 476.  Here, Hawley has alleged that the involved corrections officers derived some level of enjoyment from the strip searches, and his averments and exhibits theorize that they conducted the searches with the goal of humiliating the plaintiff and/or gratifying themselves.

Regarding the objective prong, "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." Id. at 477.  At the same time, "[t]he absence of force or injury will not doom a sexual abuse claim outright."  Thus, the objective inquiry into whether a claim of sexual abuse is sufficiently serious is contextual and fact specific. Id. at 478.  For his part, Hawley alleges that the searches were conducted in the above-referenced manner despite the fact that he "never left the cell, [and] had no opportunity to obtain contraband[.]" (Doc. 80, Sec. Am. Compl. ¶ 23).  Consequently, the plaintiff has alleged a plausible Eighth Amendment claim related to the strip searches.

Additionally, the Fourth Amendment protects "[t]he right of the people to be secured in their persons ... against unreasonable searches and seizure." U.S. CONST. amend. IV.  The Fourth Amendment thus applies to bodily searches in prison. Parkell v. Danberg, 833 F.3d 313, 325, 326 (3d Cir. 2016).  Although an

inmate's Fourth Amendment rights are "very narrow[,]" they are granted "a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." Id.  The test for reasonableness of a search requires a balancing of need for a particular search against the invasion of personal rights that search entails, and courts must consider the scope of particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted, which in the prison setting, requires further considerations. Id. at 324-326 (citations omitted).  In support of their motion to dismiss, defendants argue that the strip searches were necessary for staff and inmate safety. (Doc. 85 at 11).  But the issue of whether there are legitimate penological interests that might justify the nature of the searches is not fully before the court on a motion to dismiss.  Given Hawley's particular description of the strip searches, his second amended complaint sets forth sufficient facts to move forward with a Fourth Amendment claim and an Eighth Amendment claim.

### c. Retaliation Claims

Hawley's second amended complaint also alleges that prison staff subjected him to the above-described strip searches after he complained about the denial of items in the RHU.  Hawley further avers that prison staff moved him into a squalid cell after he complained about the nature of the strip searches.  As

indicated above, the court construes Hawley's pleading as raising First Amendment retaliation claims.

"A prisoner alleging retaliation must show: (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)(cleaned up). Causation may be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016)(citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

It is well-established that Hawley's oral and written grievances are constitutionally protected.[8]  See Mack v. Warden Loretto FCI, 839 F.3d 286, 298–300 (3d Cir. 2016)("Mack II"), abrogated on other grounds by Ziglar v. Abbasi, 582 U.S. 120 (2017).  As for the adverse actions alleged, the applicable standard looks to the "person of ordinary firmness" and does not ask whether the plaintiff himself was deterred. Mirabella v. Villard, 853 F.3d 641, 650 (3d Cir. 2017).  The

---

[8] Hawley's second amendment complaint alleges that SCI-Rockview staff denied him prison grievance forms.

22

strip searches, as described, and extended confinement in a "shockingly unsanitary" cell would sufficiently deter a person of ordinary firmness from exercising their constitutional rights.

Furthermore, Hawley's pleading also alleges unusually suggestive temporal proximities.  First, per the plaintiff, the strip searches followed within a day or two of his oral complaints to other corrections officers about denial of "basic issue."  Second, as further alleged, his transfer to a squalid cell occurred within 1-3 days of telling Counselor Lion that he felt abused by the strip searches and that he wanted to file a PREA complaint.  His transfer also allegedly occurred on the same date that other officers processed the outgoing mail associated with his PREA complaint.  Thus, Hawley has also plausibly stated First Amendment retaliation claims in his second amended complaint.

### d. Personal Involvement

The merits analysis in this case also requires consideration of the number of defendants named in conjunction with Hawley's claims.  In Section 1983 actions, a defendant must have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  In advancing any such claim against prison officials, a plaintiff cannot rely solely on a *respondeat superior* theory of liability. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Rode, 845 F.2d at 1207).  "Personal involvement can be shown

through allegations of personal direction or of actual knowledge and acquiescence[,]" but such allegations must be made with appropriate particularity. Rode, F.2d at 1207.

As indicated above, CO McIntyre, CO Chriswell, CO Burns, and Nurse More are named as defendants solely for allegedly making uncaring, insensitive, or sarcastic comments. (Doc. 80, Sec. Am. Compl. ¶¶ 9-11, ¶¶ 69-70).  Even if Hawley subjectively believed such statements to be harassment or taunting, such statements do not infringe on the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, see Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018) Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009), nor do they amount to adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010).   Those defendants are subject to dismissal from this action.

As for Counselor Lion, Hawley alleges that she made insensitive comments about the nature of the strip searches after plaintiff spoke to her about them and requested to make a PREA complaint. (Doc. 80, Sec. Am. Compl. ¶¶ 23-24).  Per Hawley, CO Bowersox and a John Doe officer also were involved in the process of mailing plaintiff's PREA complaint on March 10, 2023. (Id. ¶¶ 26-28).  On that same date, Hawley alleges that he was moved into a squalid cell and kept there

for 48 days in retaliation for making formal complaints about the strip searches. (Id. ¶¶ 29-30, 36).  The plaintiff, however, has failed to allege that Counselor Lion, CO Bowersox, and this John Doe officer personally directed the strip searches or were involved in his transfer to a squalid cell.  He has also not alleged that they had actual knowledge of the allegedly retaliatory acts or whether they knew and acquiesced to such conduct.  Counselor Lion, CO Bowersox, and the John Doe corrections officer involved in handling the PREA complaint are also subject to dismissal from this action.

Hawley also asserts claims against Defendant Paul, a grievance processing official and warden's assistant.  A Section 1983 action may not proceed against a defendant where her involvement in the claim is limited to the review and denial of prison grievances. See Dooley, 957 F.3d at 374.  Hawley alleges that Defendant Paul sent back grievances with no decision or failed to address grievances in a timely manner. (Doc. 80, Sec. Am. Compl. ¶¶ 78–83). Since these allegations correspond solely to the review and denial of grievances, Defendant Paul is also subject to dismissal from this action.

The second amended complaint further advances claims against a number of supervisory officials at SCI-Rockview, including: 1) RHU unit managers, Defendants Knapp and Miller; 2) their supervisor, Defendant Major Haldeman; 3) deputy superintendents, Defendants Rowe and Woodring; and 4) the warden,

Defendant Salamon.  As for these defendants, a supervisor may be liable in a Section 1983 action if she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). A supervisor may also be liable if she, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm. See id. (citation omitted); see also Santiago v. Warminster Twp., 629 F.3d 121, 129, n. 5 (3d Cir. 2010).

Defendants Knapp and Miller, the RHU unit managers, are named as defendants in conjunction with plaintiff's claims for failure to provide him with indigent status hygiene packets, razors, and nail clippers. Since these claims do not plausibly state Eighth Amendment violations and Hawley has made no supervisory liability allegations against these defendants for his viable strip search, cell conditions, or retaliation claims, Defendants Knapp and Miller are subject to dismissal from this action.

Defendant Major Haldeman is alleged to be the supervisor for Defendants Knapp and Miller.  Similarly, any supervisory liability claim against this defendant for the denial of hygiene packets, razors, and nail clippers falls short.  Major Haldeman, however, is further mentioned regarding Hawley's viable cell

conditions claim. Specifically, Hawley alleges that, on April 14, 2023, he sent a request slip to Major Haldeman regarding the presence of feces in his cell and the failures of the prison to clean this cell since his transfer several weeks earlier. (Doc. 80, Sec. Am. Compl. ¶ 72 & Ex. N). Per Hawley, he received no response to this request slip, id., but he did receive a response from Major Haldeman to another similarly dated request slip regarding denial of access to a razor and the law library, (id. ¶ 73 & Ex. O). Construing Hawley's allegations and exhibits liberally, the second amended complaint plausibly suggests that Major Haldeman received his request slips, possessed knowledge of his cell conditions, and acquiesced in the alleged constitutional violations by subordinate officers. Per Hawley, he remained in the cell for approximately two more weeks after sending this notice to Major Haldeman. (Id. ¶ 36). Thus, the second amended complaint states a claim against this defendant.

Two individuals with supervisory authority are named as defendants for quickly walking by Hawley's second RHU cell while making rounds and not talking to him, Deputy Superintendent Rowe and Deputy Superintendent Woodring. (Id. ¶¶ 45-46). This alleged conduct, in and of itself, does not state a plausible claim for violation of Hawley's constitutional rights. There are no allegations that Deputy Superintendent Rowe and Deputy Superintendent Woodring looked inside the plaintiff's RHU cell and observed the conditions as

27

alleged. On the other hand, Hawley asserts that Warden Salamon stopped at his cell and engaged in conversation with him where he complained of various matters, including the conditions of his cell. Consequently, the allegations of the second amended complaint, when construed in plaintiff's favor, sufficiently state that Warden Salamon, as the person in charge, had knowledge of and acquiesced in her subordinates' violations of the plaintiff's Eighth Amendment rights.

For the reasons set forth above, Hawley has stated plausible claims for violations of his First, Fourth, and Eighth Amendment rights against many of the defendants named in this action, including Warden Salamon, Major Haldeman, CO Jenks, CO Shafer, CO Hershey, CO Corman, CO Fye, CO Hayles, CO Shafer, and two John Doe corrections officers. Thus, some of his claims are considered meritorious, subject to further testing in the litigation process.

### 2. The Remaining Poulis Factors

There are five remaining Poulis factors to consider, which are: (1) the extent of the party 's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; and (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions. 747 F.2d at 868. All of the considered factors

are not "a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation[.]" Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)(citations omitted).  And not all factors need to be satisfied for dismissal to occur. See id. (citation omitted); see also Hildebrand v. Allegheny Cnty., 923 F.3d 128, 132 (3d Cir. 2019) ("None of the Poulis factors is alone dispositive, and it is also true that not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution.")  An analysis of the five remaining factors prompted the magistrate judge to recommend dismissal. (See Doc. 93, R&R at 7-11).  Based on Hawley's objections, the court will also review these factors de novo.

### a. Personal Responsibility

As indicated above, Hawley violated Local Rule 7.6 by not filing a brief in opposition of the motion to dismiss despite two orders from Magistrate Judge Carlson providing him with notice of the Local Rules and indicating that he would deem the motion to be unopposed. (Docs. 86, 89).   The court agrees with the magistrate judge that Hawley ultimately bears personal responsibility for his failure to file a brief in opposition.  His letters to the court following the deadline date cut both ways. (Docs. 91-92).  While Hawley can assert that he has experienced government interference and further denials of resources in those letters, he has previously requested and been granted extensions of time in this

29

case. Assuming Hawley's averments are true, nothing precluded him from specifically requesting a *nunc pro tunc* extension of time in his two court submissions between the deadline date and the issuance of the R&R. Accordingly, the personal responsibility factor weighs in favor of dismissal.

### b. Prejudice to the Adversary

As for the second Poulis factor, prejudice to the adversary, that consideration includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Adams v. Trs. of New Jersey Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 873–74 (3d Cir. 1994). But prejudice "is not limited to 'irremediable' or 'irreparable' harm." Briscoe, 538 F.3d at 259 (quoting Adams, 29 F.3d at 874). Rather, "the burden imposed by impeding a party's ability to [effectively prepare] a full and complete trial strategy is sufficiently prejudicial." Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).

After careful consideration, the second Poulis factor weighs only slightly in favor of dismissal. On one hand, Hawley's failure to file a brief in opposition prompted Magistrate Judge Carlson to recommend dismissal of this action for failure to prosecute. By raising merits arguments in an objection to the R&R rather than in a timely-filed brief in opposition, Hawley has frustrated and delayed

resolution of this matter by several months.  On the other hand, there is nothing definitive in the record suggesting that the defendants have been impeded in their ability to effectively prepare for trial.  Defendants did not respond to Hawley's objection to the R&R.  Without hearing from Hawley's adversaries on the issue, the court would have to resort to speculation as to the actual prejudice sustained by the defendants, if any.  If some prejudice can be presumed from the delay, this factor would only weigh slightly in favor of dismissal.

### c. History of Dilatoriness

The third Poulis factor, which looks at Hawley's history of dilatoriness, also weighs slightly in favor of dismissal.  "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as…complying with court orders." Adams, 29 F.3d at 874.  In deciding whether a history of dilatory conduct exists, the court must evaluate "a party's problematic acts…in light of its behavior over the life of the case." Id. at 875. "[C]onduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." Briscoe, 538 F.3d at 261 (cleaned up).

Here, regarding his previous amended complaint, Hawley failed to oppose a motion to dismiss in a timely manner. (Doc. 50).  Coupled with two missed deadlines regarding the present motion, Hawley has demonstrated that his issues with complying with the Local Rules and court orders are not just a recent

concern.  But if one or two violations are insufficient to demonstrate dilatoriness, then three violations cannot overwhelmingly tip the scales when considering this factor.  Moreover, Hawley eventually responded to the present motion to dismiss with merits arguments.  Accordingly, this factor weighs only slightly in favor of dismissal.

### d. Willful Conduct or Bad Faith

The court next addresses whether Hawley's conduct was willful or in bad faith.  In evaluating this factor, the court looks for intentional, self-serving, or "contumacious" behavior, which could be characterized as "flagrant bad faith." See Adams, 29 F.3d at 875 (discussing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976)).  Hawley's objections to the R&R reflect that the delay was not due to his own obstinance or indignance, but due to the nature of his reincarceration in an RHU unit at SCI-Mahanoy and further alleged misconduct by officials there.  Under the totality of the circumstances that present themselves to the court, it cannot be discerned that Hawley acted willfully or in bad faith.

### e. Effectiveness of Sanctions Other than Dismissal

The fifth factor to consider is the availability and effectiveness of sanctions other than dismissal.  Due to Hawley's status as an indigent, incarcerated *pro se* litigant, monetary sanctions are unavailable.  See Briscoe, 538 F.3d at 262–63;

Emerson, 296 F.3d at 191.  Under the circumstances, there are no non-monetary sanctions to consider.  Thus, this factor weighs in favor of dismissal.

Two of the six Poulis factors weigh definitively in favor of dismissal of this action. Two other factors weigh slightly in favor of dismissal.  By the math, more factors support dismissal of this action than not. The Third Circuit Court of Appeals, however, has repeatedly acknowledged that dismissals with prejudice are drastic and must be a sanction of last resort.  See Hildebrand v. Allegheny Cnty., 923 F.3d 128, 132 (3d Cir. 2019)(citations omitted).  Moreover, the "sanction of dismissal is disfavored absent the most egregious circumstances." United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161 (3d Cir. 2003)(citing Poulis, 747 F.2d 867–868).

The potential merit of Hawley's civil rights claims and the lack of egregious conduct to this point prevent the court from adopting the R&R, saying nothing about the analysis of the record before Magistrate Judge Carlson as it existed at the time he issued his recommendation.  "If the case is close," which it is here, " 'doubts should be resolved in favor of reaching a decision on the merits.' " Hildebrand, 923 F.3d at 132 (quoting Adams, 29 F.3d at 870)).  Thus, this case will not be dismissed.  Hawley is forewarned, however, that further violations of the Local Rules, missed deadlines, and/or failures to comply in discovery may result in sanctions up to and including dismissal of his case.

**C. Defendants' Motion to Dismiss**

In ruling upon Hawley's objections to the R&R, the court has the option to recommit this matter to the magistrate judge with instructions. This option would only delay resolution of this action.  Thus, the court will rule upon the pending motion to dismiss filed by the defendants.

For the reasons discussed in Section B1, the defendants' motion to dismiss will be granted in part and denied in part.  The motion to dismiss will be granted regarding Hawley's Eighth Amendment conditions of confinement claim related to a three-day denial of additional clothing, bedding, and toiletries upon transfer to the RHU at SCI-Rockview.  The motion to dismiss will also be granted regarding Hawley's Eighth Amendment conditions of confinement claim related to ongoing denials of indigent status hygiene packets, razors, and nail clippers.  The motion to dismiss Hawley's First Amendment retaliation claims will be granted except for those associated with the plaintiff's strip search claims and his squalid cell claim.

Hawley's second amended complaint further fails to state plausible claims against many defendants.  The following defendants will be dismissed from this action: 1) Deputy Superintendent Woodring; 2) Deputy Superintendent Rowe; 3) Grievance Coordinator Paul; 4) RHU Manager Miller; 5) RHU Manager Knapp; 6) Nurse More; 7) Counselor Lion; 8) CO Burns; 9) CO McIntyre; 10) CO Chriswell; 11) CO Bowersox; 12) Medical Supervisor Coffman; and 13) the John Doe

corrections officer associated with retrieving the plaintiff's PREA complaint from his cell.  The defendants' motion to dismiss will otherwise be denied.  That means the remaining claims will proceed against Warden Salamon, Major Haldeman, CO Jenks, CO Shafer, CO Hershey, CO Corman, CO Fye, CO Hayles, and two John Doe corrections officers associated with the strip searches.

As for leave to amend, Hawley has had three opportunities to assert claims against prison staff and officials at SCI-Rockview relative to the alleged conduct. Hawley will not receive a fourth opportunity because amendment is futile at this point. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002)(discussing the rule that *in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile); Jones v. Unknown D.O.C. Bus Driver & Transportation Crew, 944 F.3d 478, 483 (3d Cir. 2019)(holding that it would be futile to provide a *pro se* inmate a third opportunity to amend his complaint). Accordingly, the dismissal of the above-referenced claims and defendants will be with prejudice.

**Conclusion**

For the reasons set forth above, the court will sustain Hawley's objections to the R&R and not adopt the recommendation that this action be dismissed with prejudice due to the plaintiff's failure to prosecute.  Defendants' motion to dismiss

Hawley's second amended complaint will be granted in part and denied in part

consistent with the analysis in this memorandum.  An appropriate order follows.

Date: _5/30/25_                                   _____
                                                 JUDGE JULIA K. MUNLEY
                                                 United States District Court