IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO HAWLEY,** | : | Civil No. 3:23-CV-1434 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| **WARDEN BOBBI JO SALAMON,** et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

This inmate *pro se* civil rights action is currently proceeding on several discrete legal claims. The plaintiff, Antonio Hawley, alleges that: (1) prison staff violated his rights under the Fourth and Eighth Amendments when they conducted strip searches of the plaintiff between March 5 and 7, 2023; (2) the conditions of his confinement during March and April of 2023 at SCI Rockview violated his Eighth Amendment right to be free from cruel and unusual punishment; and (3) these strip searches and unsanitary cell placements were ordered in retaliation for Hawley's exercise of his right to grieve about conditions in the Restricted Housing Unit at the prison.

The parties are now engaged in discovery and embroiled in some discovery disputes, disputes which have inspired Hawley to file this motion to compel. (Doc.

1

114). In this motion Hawley challenges the sufficiency of the following discovery responses:

> Hawley first requested:
>
> The scope of federal the scope of federal court discovery is set forth in rules 26 (b) (1), Fed. R. Civ. P: unless otherwise limited by court order the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged [sic] matter that is relevant to any partys [sic] claim or defense including the existence, description, nature, custody, condition, & location of any documents, or other tangible things & the identity & location of persons having knowledge of any discoverable matter. For good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action.

(Doc. 125 Exh. A, Request 2). Defendants responded to this request asserting that the request is unclear, vague, and has multiple interpretations. (Id. Exh. B, Request 2).

Second, Hawley requested the camera footage from various dates while he was housed in the RHU. (Id. Exh. A, Request 3). Defendants responded to the request asserting that no responsive documents were discovered after a reasonable investigation. (Id. Exh. B, Request 3). Hawley generally alleges that there should be camera footage because he requested it be preserved. (Doc. 115, at ¶¶ 10-12).

Third, Hawley sought copies of all PREA complaints filed by inmates against Defendants Jenks, Hershey, and Fry. (Id. Exh. A, Request 4). The Defendants objected to this request, arguing that the records are irrelevant, confidential, and Hawley's possession of these records would violate prison policy.

Fourth, Hawley sought a copy of DOC Policy 6.5.1. (Id. Exh. A, Request 5). The Defendants have objected to this discovery request, citing confidentiality and institutional security concerns.

Finally, Hawley sought "the names, titles, & duties of all staff members at SCI-Rockview who have responsibility for responding to, investigating or deciding inmate grievances." (Id. Exh. C, Request 2). Defendants objected as this request sought information outside the scope of discovery and was unduly burdensome. (Id. Exh. D, Request 2).

With Hawley's discovery demands framed in this fashion, this motion to compel is fully briefed and is therefore ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, will GRANT the motion, in that we will direct the Defendants to submit any relevant staff misconduct reports relating to the named defendants to the Court for *in camera* review. Otherwise, we will DENY the motion.

## II. Discussion

### A. Guiding Principles

The parties' discovery disputes are judged against familiar legal guideposts. As we have observed when addressing similar discovery issues:

> Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d

3

Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2–3 (M.D. Pa. Jan. 9, 2020).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

Lopez v. Wetzel, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

In addition, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information relating to security procedures can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *3–4 (M.D. Pa. Jan. 18, 2019) (quoting Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Finally, it is clear that a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v.

7

Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met:

> The party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

### B. **The Motion to Compel will be Denied in Part and Granted in Part**

Guided by these legal tenets, with one exception discussed below, the plaintiff's motion to compel will be denied.

At the outset, we agree that no further response was required with respect to Hawley's request number 2 which simply parroted the language of the rules and stated:

> The scope of federal the scope of federal court discovery is set forth in rules 26 (b) (1), Fed. R. Civ. P: unless otherwise limited by court order the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged [sic] matter that is relevant to any partys [sic] claim or defense including the existence, description, nature, custody, condition, & location of any documents, or other tangible things & the identity & location of persons having knowledge of any discoverable matter. For good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action.

(Doc. 125 Exh. A, Request 2). This request is nothing more than a restatement of the law. As such, this discovery request does not require any further factual response.

Likewise, to the extent that Hawley requests the camera footage from various dates while he was housed in the RHU, the defendants have stated that this footage no longer exists. Since "a court should not enter an order compelling a party to produce documents where the documents do not exist," Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014), we will remind the Defendants of their ongoing duty to supplement discovery but will deny the motion to compel that which cannot be found. However, we enter this discovery directive without prejudice to Hawley seeking a spoliation inference at trial, if appropriate.

Hawley's request for production of DOC security policies like DOC Policy 6.5.1 will also be denied. Inmate access to these sensitive security procedures presents a grave threat to institutional security. Accordingly,

> [N]umerous federal courts in Pennsylvania have sustained the Department of Corrections' objections to wholesale release of the procedures manual to policy 6.5.1 and 6.3.1, and have denied substantially similar motions to compel filed by other inmates. See, e.g., Houser v. Pa. Dep't of Corr., Civ. A. 13-cv-1068, 2015 U.S. Dist. LEXIS 21254, at *11-12, 2015 WL 757552 (W.D. Pa. Feb. 23, 2015) (finding that to permit inmate access to 6.5.1's confidential internal working procedures for staff dealing with Security Level 5 RHU inmates would create a "substantial security risk"); Whitney v. Wetzel, Civ. A. No. 2:12-cv-1623, 2014 U.S. Dist. LEXIS 155226, at *4-5, 2013 WL 5513481 (W.D. Pa. Oct. 31, 2014) (finding that policy 6.5.1 "is a privileged and confidential document that addresses the administration of Security Level 5 Housing Units."); Spencer v. Collins, 2013 WL 5176747, at *2 (M.D. Pa. Sept. 12, 2013) (finding defendants' safety and security concerns about releasing the 6.5.1 manual outweighed the plaintiff's interest in its production); Mikell v.

9

> Moore, 2013 U.S. Dist. LEXIS 29675, at *22-24 (M.D. Pa. Mar. 5, 2013) (refusing to compel production of sections of 6.3.1 and 6.5.1 relating to double celling inmates); Huertas v. Beard, No. 101-, 2012 U.S. Dist. LEXIS 105631, 2012 WL 3096430, at *3 (W.D. Pa. July 30, 2012); Bailey v. McMahon, No.1:CV-07-2238, 2012 U.S. Dist. LEXIS 52211, 2012 WL 1246147, at *7 (M.D. Pa. Apr. 12, 2012) (denying motion to compel production of DC-ADM 6.5.1, agreeing with Department of Corrections' assertion that its interest in confidentiality and institutional security outweighed plaintiff's interest in reviewing the manuals); Victor v Lawler, Civ. A. No. 3:08-CV-1374, 2011 U.S. Dist. LEXIS 53133, 2011 WL 1884616 (M.D. Pa. May 18, 2011) ("[We find that release of policy manuals [6.3.1 and 6.5.1] themselves would undermine institutional security.").

Mercaldo v. Wetzel, No. 1:13-CV-1139, 2016 WL 5851958, at *3 (M.D. Pa. Oct. 6, 2016).

Finally, we turn to Hawley's request for copies of all PREA complaints filed by inmates against Defendants Jenks, Hershey, and Fry and his demand for production of: "the names, titles, & duties of all staff members at SCI-Rockview who have responsibility for responding to, investigating or deciding inmate grievances." (Id. Exh. C, Request 2). With one narrow exception, these requests will be denied since:

> These are precisely the kinds of sweeping, generalized and overly broad discovery requests judges in the Middle District of Pennsylvania have rejected as being not only overly broad, but unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with staff. See, e.g., Montanez v. Tritt, Civ. No. 3:14-CV-1362, 2016 WL 3035310, at *4 (M.D. Pa. May 26, 2016) (denying motion to compel production of incident reports, grievances and other documents involving other inmates where they were found to be "overly broad, irrelevant, confidential, [and to] bear no sufficient connection to this case, and raise obvious privacy and

10

security issues.") (Mariani, J.); Lofton v. Wetzel, Civ. No. 1:12-CV-1133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 9, 2015) (Conner, C.J.) ("It is apparent that [the plaintiff's] requests for 'any and all' records of inspection, and 'all' incident reports and grievances are a grossly overstated fishing expedition. [His] request for incident reports and grievances regarding other inmates raises obvious privacy and security issues, and the relevance of such information is questionable at best."); Sloan v. Murray, No. 3:11-CV-994, 2013 WL 5551162, at *4 (M.D. Pa. Oct. 8, 2013) (Caputo, J.) (denying motion to compel grievance responses that concerned other inmates, citing DOC policy prohibiting inmates from receiving information about one another); Torres v. Clark, Civ. No. 1:10-CV-1323, 2011 WL 4898168, at *2-3 (M.D. Pa. Oct. 13, 2011) (Caldwell, J.) (denying motion to compel inmate request for discovery of 27-months of grievances about a specific cell block, finding it to be overly broad, burdensome, and potentially implicating privacy interests of other inmates); McDowell v. Litz, Civ. No. 1:CV-08-1453, 2009 WL 2058712, at *3 (M.D. Pa. July 10, 2009) (Rambo, J.) (finding requests for discovery of grievances filed by non-party inmates to be "overbroad and overly burdensome" and agreeing with the defendants' "concerns about accessing private information with respect to other inmates' grievances."); Callaham v. Mataloni, Civ. No. 4:CV-06-1109, 2009 WL 1363368, at *3-4 (M.D. Pa. May 14, 2009) (Jones, J.) (denying motion to compel, inter alia, grievances relating to medical treatment of other inmates, citing privacy concerns); cf. Banks v. Beard, Civ. No. 3:CV-10-1480, 2013 WL 3773837, at *5 (M.D. Pa. July 17, 2013) (Munley, J.) (denying motion to compel account statements for other inmates despite plaintiff's claim of relevance).

Allen v. Eckard, No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019).

Therefore, to the extent that Hawley seeks wholesale disclosures of "the names, titles, & duties of all staff members at SCI-Rockview who have responsibility for responding to, investigating or deciding inmate grievances" the motion to compel is denied. However, to the extent that Hawley advances a more narrowly tailored

request for records of sexual assault allegations relating to named defendants in this case, if any PREA documentation reveals a *finding* of misconduct by any of the named defendants, that information will be provided to the court for its *in camera* review. We will follow this course recognizing that this narrow class of prison records may contain arguably discoverable factual material. In charting this path, we reconcile the interests of inmate-plaintiff and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06–1751, 2007 WL 4375937, *4–5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06–175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008). See Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *5 (M.D. Pa. Jan. 18, 2019).

    An appropriate order follows.

                                          */s/ Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge

DATED: December 9, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO HAWLEY,** | : | Civil No. 3:23-CV-1434 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| **WARDEN BOBBI JO SALAMON,** et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

## ORDER

AND NOW, this 9th day of December 2025, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's motion to compel (Doc. 114) is DENIED, with one exception: if any PREA documentation reveals a *finding* of misconduct by any of the named defendants, that information will be provided to the court for its *in camera* review on or before **January 6, 2026**. If no such responsive material exists, the Defendants will file a notice confirming that there are no responsive records.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge