IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO HAWLEY,** | : | Civil No. 3:23-CV-1434 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| **WARDEN BOBBI JO SALAMON,** et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

This inmate *pro se* civil rights action, which comes before us for consideration of a second motion to compel discovery, (Doc. 132), is currently proceeding on several discrete legal claims. These claims, in turn, define the scope of what is relevant for discovery purposes.

Specifically, the plaintiff, Antonio Hawley, alleges that: (1) prison staff violated his rights under the Fourth and Eighth Amendments when they conducted strip searches of the plaintiff between March 5 and 7, 2023; (2) the conditions of his confinement during March and April of 2023 at SCI Rockview violated his Eighth Amendment right to be free from cruel and unusual punishment; and (3) these strip searches and unsanitary cell placements were ordered in retaliation for Hawley's

1

exercise of his right to grieve about conditions in the Restricted Housing Unit at the prison.

The parties are now engaged in discovery and embroiled in some discovery disputes, disputes which have inspired Hawley to file this second motion to compel. (Doc. 132). Broadly speaking, in this motion Hawley seeks the following categories of information: Hawley first requested copies of his own prior complaints of sexual assault under the Prison Rape Elimination Act. Second, Hawley sought "any and all policies, directive or instructions to staff concerning sanitation, personal hygiene, & inspection of cells both in population & RHU, and of indigent status inmates." Third, Hawley requested "all reports, memos, email pertaining to the plaintiff's subject civil matter at hand i.e. condition of confinement, retaliation, excessive strip searches." Fourth, Hawley sought "Federal & State inspection of SCI Rockview reports, memo, result, complaints for the passed [sic] 2025 to 2020." Notably, the temporal scope of many of these requests is unclear, and the requests are not limited to the RHU where Hawley was housed at the time of the events alleged in his complaint but appear to extend throughout the prison. Finally, Hawley tendered interrogatories which asked whether SCI Rockview was being shut down and inquired why Rockview was being shut down.[1]

---

[1] Hawley has also complained about the redaction of some documents previously provided to him, but the defendants have averred that the redactions relate solely to

With Hawley's discovery demands framed in this fashion, the defendants have lodged objections based upon relevance, overbreadth, and institutional security concerns. This motion to compel is fully briefed and is therefore ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, will GRANT the motion, in part, and DENY it in part.

## II. Discussion

### A. Guiding Principles

The parties' discovery disputes are judged against familiar legal guideposts. As we have observed when addressing similar discovery issues:

> Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:
>
>> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great

---

information that is irrelevant and would adversely effect institutional security. We deem this response to be adequate.

> deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J. 1996); see also <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only

4

"nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2–3 (M.D. Pa. Jan. 9, 2020).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." <u>Wells v. JPC Equestrian, Inc.</u>, No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. <u>See, e.g.</u>, <u>AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.</u>, No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); <u>Knauss v. Shannon</u>, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See <u>Lawson v. Love's Travel Stops & Country Stores, Inc.</u>, No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

<u>Lopez v. Wetzel</u>, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

In addition, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information relating to security procedures can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *3–4 (M.D. Pa. Jan. 18, 2019) (quoting Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Finally, it is clear that a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met:

> The party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

These legal tenets guide us in the resolution of the instant discovery disputes.

## B. The Motion to Compel will be Denied in Part and Granted in Part

Upon consideration, we note that the outset that Hawley's request for copies of his own prior PREA complaints now appears to be moot since the defendants indicate that they have provided these prior complaints to the plaintiff.

As for Hawley's request for "all reports, memos, email pertaining to the plaintiff's subject civil matter at hand i.e. condition of confinement, retaliation, excessive strip searches," we construe this to be nothing more than a demand for production of all documentation in the defendants' possession, custody or control relating to the incidents alleged by the plaintiff in his complaint. Construed in this fashion, the request seeks information that is both relevant and proportional to the needs of the case. Therefore, the motion to compel production of this information is granted. To the extent that the defendants have already produced all relevant materials in their possession, they shall confirm this fact for Hawley.

Hawley also seeks "any and all policies, directive or instructions to staff concerning sanitation, personal hygiene, & inspection of cells both in population & RHU, and of indigent status inmates," along with "Federal & State inspection of SCI Rockview reports, memo, result, complaints for the passed [sic] 2025 to 2020." We agree that these requests, as proffered, are overly broad in their temporal and topical scope. Hawley's allegations relate to a specific time frame, 2023 and entail events which allegedly took place in a particular unit within the prison, the RHU. Yet, as

8

we read these discovery requests Hawley seeks information which is institution-wide and spans many years. In the past we have denied similar discovery requests which lack reasonable temporal or topical definition. See Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *4 (M.D. Pa. Jan. 18, 2019) (collecting cases). Therefore, since Hawley's requests are unbounded by any clear topical or temporal limits, we will deny these requests without prejudice to the plaintiff seeking additional discovery specifically regarding RHU conditions between 2022 and 2024, the relevant time frame in this case.[2]

Finally, Hawley tendered interrogatories which asked whether SCI Rockview was being shut down and inquired why Rockview was being shut down. We understand that these discovery demands are designed to ascertain whether the prison was closed due to deteriorating conditions, a matter which could be relevant to the plaintiff's conditions of confinement claim. The defendants object to these requests on relevance grounds but to the extent that the closure of SCI Rockview and the publicly stated reasons for that closure shed some light on this issue, we disagree. Therefore, the defendants will be required to confirm the closure of this institution and provide Hawley with the statement relating to the reasons for that closure which they have referenced in their pleadings.

---

[2] We note that, at the defendants' request, the discovery deadline has been extended to February 28, 2026. (Doc. 143). Therefore, Hawley would still be able to submit more narrowly tailored discovery demands in this case.

9

An appropriate order follows.

<u>*/s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: December 23, 2025

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO HAWLEY, | : | Civil No. 3:23-CV-1434 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| WARDEN BOBBI JO SALAMON, et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

## **ORDER**

AND NOW, this 23d day of December 2025, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's second motion to compel (Doc. 132) is GRANTED, in part and DENIED, in part as follows:

Hawley's request for copies of his own prior PREA complaints is DEEMED MOOT since the defendants indicate that they have provided these prior complaints to the plaintiff.

Hawley's request for "all reports, memos, email pertaining to the plaintiff's subject civil matter at hand i.e. condition of confinement, retaliation, excessive strip searches," which we construe as nothing more than a demand for production of all documentation in the defendants' possession, custody or control relating to the incidents alleged by the plaintiff in his complaint, is GRANTED.

11

Hawley's demand for "any and all policies, directive or instructions to staff concerning sanitation, personal hygiene, & inspection of cells both in population & RHU, and of indigent status inmates," along with "Federal & State inspection of SCI Rockview reports, memo, result, complaints for the passed [sic] 2025 to 2020," is DENIED as overbroad without prejudice to the plaintiff seeking additional discovery specifically regarding RHU conditions between 2022 and 2024, the relevant time frame in this case.

With respect to Hawley's interrogatories which asked whether SCI Rockview was being shut down and inquired why Rockview was being shut down, these requests for discovery are GRANTED IN PART in that the defendants are required to confirm the closure of this institution and provide Hawley with the statement of reasons relating to that closure which they have referenced in their pleadings.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
