**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO HAWLEY,** | : | **Civil No. 3:23-CV-1434** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **WARDEN BOBBI JO SALAMON,** | : | |
| **et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM AND ORDER</u>**

## I.  <u>Factual and Procedural Background</u>

This inmate *pro se* civil rights action is currently proceeding on several discrete legal claims. The plaintiff, Antonio Hawley, alleges that: (1) prison staff violated his rights under the Fourth and Eighth Amendments when they conducted strip searches of the plaintiff between March 5 and 7, 2023; (2) the conditions of his confinement during March and April of 2023 at SCI Rockview violated his Eighth Amendment right to be free from cruel and unusual punishment; and (3) these strip searches and unsanitary cell placements were ordered in retaliation for Hawley's exercise of his right to grieve about conditions in the Restricted Housing Unit at the prison.

The parties are now engaged in discovery and embroiled in some discovery disputes, disputes which have inspired Hawley to file two motions to compel. (Docs.

1

155, 157). In his first motion, Hawley made two requests: At the outset, Hawley asked that Defendants describe the "extent, duties, & procedure of storing & holding of electronic evidence such as camera flim [sic] for litigation." (Doc. 155). This information was apparently sought in connection with a spoliation claim that Hawley seeks to advance. In addition, Hawley demanded that Defendants "describe with specific detail the nature, extent, duties & procedures of the cleaning and/or sanitation of feces, urine & or blood," information which would be relevant to his conditions of confinement claim. (Id.)

Hawley's second motion, (Doc. 157), related to requests for admissions directed to Nicki Paul, a former party who was dismissed from this action in May of 2025. (Docs. 98, 99). In addition, Hawley posed a very broadly framed request for admissions which requested that defendant Salamon admit or deny whether she was "aware of Acts and /or standards that may govern a prison & its prisoners." Hawley urged us to compel further responses to these requests for admission.

With Hawley's discovery demands framed in this fashion, these motions to compel are fully briefed and are therefore ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, will GRANT the motion to compel, (Doc. 155), which seeks information relevant to spoliation issues and standards of cleanliness in inmate cells, but DENY the motion to compel, (Doc. 157), which seeks further responses to Hawley's requests for admission.

2

## II.   Discussion

### A. Guiding Principles

The parties' discovery disputes are judged against familiar legal guideposts.

As we have observed when addressing similar discovery issues:

> Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:
>
>> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

3

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2–3 (M.D. Pa. Jan. 9, 2020).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can

> the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

Lopez v. Wetzel, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

In addition, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information relating to security procedures can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from

6

the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *3–4 (M.D. Pa. Jan. 18, 2019) (quoting Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

In addition, when considering discovery disputes like the instant dispute relating to requests for admissions, the court-and the litigants-must remain mindful of the limited purpose served by this particular discovery tool.

> The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested. See Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 436 (E.D. Pa. 1978); United States v. Watchmakers of Switzerland Information Center, Inc., 25 F.R.D. 197, 201 (S.D.N.Y. 1959). Where, as here, issues in dispute are requested to be admitted, a denial is a perfectly reasonable response. Furthermore, the use of only the word "denied" is often sufficient under the rule. See, e.g., Continental Casualty Co. v. Brummel, 112 F.R.D. 77, 81–82 n. 2 (D. Colo. 1986); Kleckner v. Glover Trucking Corp., 103 F.R.D. 553, 557 (M.D. Pa. 1984). "Regardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification." Havenfield Corp. v. H & R Block, Inc., 67 F.R.D. 93, 96 (W.D. Mo. 1973). "A request for an admission, except in a most unusual circumstance, should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer, such as in the case of privilege." Johnstone v. Cronlund, 25 F.R.D. 42, 46 (E.D. Pa. 1960). "Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." Id. at 45.

Liberty Mut. Ins. Co. v. Gemma, No. 2:16-CV-483, 2022 WL 1689509, at *3 (W.D. Pa. May 26, 2022) (quoting Wheeler v. Corbett, No. 3:11-CV-92, 2015 WL

4952172, at *4 (M.D. Pa. Aug. 19, 2015)). Further, by its terms Rule 36 only permits a party to "serve on *any other party* a written request to admit," to certain facts. Fed. R. Civ. P. 36. Therefore, this discovery device may not be used to elicit admissions from non-parties.

Finally, it is clear that a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met:

> The party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

### B. The Motions to Compel will be Denied in Part and Granted in Part

Guided by these legal tenets, we will GRANT the motion to compel, (Doc. 155), which seeks information relevant to spoliation issues and standards of cleanliness in inmate cells but DENY the motion to compel, (Doc. 157), which seeks further responses to Hawley's requests for admission.

At the outset, with respect to Hawley's requests for information relevant to spoliation issues and standards of cleanliness in inmate cells, we agree that these issues are relevant to Hawley's case. The question of whether there were cell

8

sanitation protocols is directly relevant to Hawley's conditions of confinement claim. Likewise, the existence and content of video preservation policies would relate to Hawley's efforts to show culpable spoliation of evidence. Therefore, Hawley's motion to compel this information will be granted.[1]

However, we agree that Hawley's motion to compel further answers to requests for admission, (Doc. 157), should be denied. At the outset, we agree that Hawley may not now compel admissions from Nicki Paul, a former party who was dismissed from this action in May of 2025. (Docs. 98, 99). Rule 36 requests for admissions are limited to parties and Paul is no longer a party.

Likewise, we agree that Hawley's request for admission propounded upon Defendant Salamon—which demands that Salamon admit or deny whether she was "aware of Acts and /or standards that may govern a prison & its prisoners"—is impermissibly broad and vague. Since Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation, the defendant was justified in declining to respond to this sweeping, but enigmatic averment.

---

[1] On this score, we note that nothing in our order denying spoliation sanctions, (Doc. 151), should be construed as barring this discovery. We simply held that this issue should be addressed by the trial judge, we did not foreclose discovery regarding this issue. To the extent that we also observed that Hawley had not shown willful withholding of information, that observation was not intended to preclude efforts by Hawley to try to develop his evidence, such as those made here.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: April 7, 2026